UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MATHEW AIME,

    Petitioner,

v.   Case No. 8:16-cv-933-MSS-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

**O R D E R**

Aime petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for manslaughter by boating under the influence and reckless operation of a vessel (Doc. 1), the Respondent asserts that the petition is untimely (Doc. 8), and Aime replies that he is entitled to relief. (Doc. 16)

**PROCEDURAL HISTORY**

A jury found Aime guilty of manslaughter by boating under the influence and reckless operation of a vessel and not guilty of boating under the influence resulting in serious bodily injury. (Respondent's Exhibit 2) The trial judge sentenced Aime to fifteen years in prison for the manslaughter conviction and time served for the reckless operation conviction. (Respondent's Exhibit 3) The state appellate court affirmed the convictions and sentences. (Respondent's Exhibit 6)

Aime moved for post-conviction relief (Respondent's Exhibit 8), the post-conviction court denied the motion as meritless (Respondent's Exhibit 9), and the state appellate court affirmed. (Respondent's Exhibit 11) Almost six years after the trial judge entered the

1

judgment, Aime filed a successive motion for post-conviction relief and asserted that newly discovered evidence demonstrated his actual innocence (Respondent's Exhibit 16), the post-conviction court dismissed the successive motion because any newly discovered evidence would not probably produce an acquittal (Respondent's Exhibit 17), and the state appellate court affirmed. (Respondent's Exhibit 20)

Aime's federal petition followed. (Doc. 1) In his federal petition, Aime asserts that he is entitled relief because the post-conviction court unreasonably denied his successive post-conviction motion and because he is actually innocent. (Doc. 1 at 5–9)

## ANALYSIS

Under 28 U.S.C. § 2244(d)(1), a one-year statute of limitation applies to a federal habeas petition challenging a state court judgment and starts from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The Respondent contends that, under Section 2244(d)(1)(A), the limitation period started when the time to seek relief on direct appeal in the United States Supreme Court expired. (Doc. 8 at 11) Aime contends that, under Section 2244(d)(1)(D), the limitation period

started on June 10, 2014, when he first discovered the evidence that supported his claim of actual innocence. (Docs. 1 at 17–18 and 16 at 6)

In support of his newly discovered evidence claim, Aime attached to his successive post-conviction motion an unsigned affidavit purportedly by John Danapas. (Respondent's Exhibit 16, Attachment) Also, he attached affidavits signed by his mother and his sister. (Respondent's Exhibit 16, Attachment)

In their affidavits, Aime's mother and sister stated that Danapas told them what he remembered on the night of the crimes and asked if Aime's sister would come to his house to type an affidavit for him. (Respondent's Exhibit 16, Attachment) Aime's sister stated that, on June 10, 2014, she and a friend went to Danapas's house, and her friend typed the affidavit. (Respondent's Exhibit 16, Attachment) Aime's mother stated that Aime's sister returned to Danapas's home with the printed affidavit, but Danapas did not sign the affidavit. (Respondent's Exhibit 16, Attachment) On February 3, 2015, Aime's mother and sister signed the affidavits that stated the above facts. (Respondent's Exhibit 16, Attachment)

Danapas's unsigned affidavit states the following (Respondent's Exhibit 16, Attachment):

> On the 17th of November, 2005, at approximately 10:30 P.M., I, John Danapas, was outside of Shades, a bar and grill, where I saw Mathew Aime. For approximately an hour, we sat and spoke about fishing and hunting. When I began to leave, several patrons came out of the bar arguing, pushing, and shoving. I walked toward the area where my truck was parked and Mathew's boat was docked. Shortly after, Mathew and his party came walking up to load the boat. Mathew asked if I would look at his boat real quick. At that time, I observed a female and [a] male board the back of the boat. I was speaking with Mathew as he boarded the front of the boat, and he asked me to turn the bow line loose, and [said] we will get together and catch some fish. At that, I untied the bow line and handed it to Mathew. After handing Mathew the bow line, the boat was backed out

> suddenly, causing Mathew to lose his balance on the bow of the boat. Mathew recovered and said "I'm okay," as he sat down on the bow of the boat [and] as it began to head out in a westerly direction.
>
> Conclusion: [A]round March of 2014, I visited Renee's Take Two Consignment Shop. At that time, Katherine Aime asked me if I had seen Mathew at the time of Mathew's accident. I asked her what accident. She began to tell me of the accident that happened on the night of November 18, 2005. As she told me of the accident, I realized I had seen Mathew that same evening as I have explained in my above statement. For my own personal reasons, at that time, I did not want any involvement with the matter and law enforcement due to my own personal issues. Mathew Aime's mother, Katherine Aime, advised me that Mathew Aime was serving a fifteen-year sentence for boating under the influence manslaughter, so I have made my decision on this _____ day of _____, 2014 to make this sworn statement about what I saw freely and voluntarily.

Under Section 2244(d)(1)(D), the limitation period starts "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Assuming that the unsigned affidavit accurately states Danapas's recollection of events, Aime met with Danapas on the evening of the crimes, spent over an hour with Danapas, asked Danapas to look at his boat, continued to speak with Danapas as he boarded the boat, asked Danapas to untie a bow line, and took the bow line from Danapas. (Respondent's Exhibit 16, Attachment)

Danapas's statement is the factual predicate of Aime's newly discovered evidence claim. On the evening of the crimes, Aime knew that Danapas had observed him board the boat and leave without driving the boat. Because Aime could have, with reasonable diligence, discovered Danapas's statement before trial, the limitation period did not start, under Section 2244(d)(1)(D), on June 10, 2014, when Aime's sister drafted Danapas's affidavit. *Melson v. Allen*, 548 F.3d 993, 1000 (11th Cir. 2008), *vacated on other grounds by Melson v. Allen*, 561 U.S.

1001 (2010) ("Melson has failed to show that the factual predicates of his claims could not have been discovered through due diligence until the autumn of 2004. To the contrary, Melson either had personal knowledge of, or could have discovered using due diligence, the factual predicates for his claims prior to his 1996 state court trial."); *Coleman v. Warden, Ga. State Prison*, 768 F.3d 1150, 1155 (11th Cir. 2014) ("'[I]t should go without saying that a factual predicate must consist of facts. Conclusions drawn from preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim.' The 'factual predicate' also has been referenced as the underlying 'vital facts' of a petitioner's claim.") (citations omitted). Instead, the limitation period started, under Section 2244(d)(1)(A), on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." On June 30, 2010, the state appellate court affirmed Aime's convictions and sentences. (Respondent's Exhibit 6) The state supreme court lacked jurisdiction to review the decision without a written opinion. *Jackson v. State*, 926 So. 2d 1262, 1263 (Fla. 2006). The time to seek review in the United States Supreme Court expired ninety days later — September 28, 2010. Consequently, the limitation period started to run the next day. *Bates v. Sec'y, Dep't Corrs.*, 964 F.3d 1326, 1329 (11th Cir. 2020). The limitation period ran for a year and expired on September 28, 2011. On April 16, 2016, Aime placed in the hands of prison officials for mailing his federal petition. (Doc. 1) Consequently, his federal petition is untimely.

"[A] properly filed application for State post-conviction or other collateral review" tolls the limitation period. 28 U.S.C. § 2244(d)(2). On November 15, 2011, after the limitation period expired, Aime, through counsel, filed a motion for post-conviction relief. Respondent's Exhibit 8) Because Aime filed the post-conviction motion after the limitation period expired,

5

the motion did not toll the limitation period. *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) ("[O]nce a deadline has expired, there is nothing left to toll. A state court filing after the federal habeas filing deadline does not revive it.").

Even assuming that the petition is timely, the claim in the federal petition is not cognizable on federal habeas. In his federal petition, Aime asserts that the state court incorrectly applied *Jones v. State*, 709 So. 2d 512 (Fla. 1998), and contends that he is actually innocent. (Doc. 1 at 6–9) Under state law, a newly discovered evidence claim is cognizable on post-conviction. *Jones*, 591 So. 2d at 915 ("Thus, we hold that henceforth, in order to provide relief [for a newly discovered evidence claim on post-conviction], the newly discovered evidence must be of such nature that it would *probably* produce an acquittal on retrial.") (italics in original). In contrast, under federal law, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).

Even though Aime couches the claim in his federal petition in terms of a violation of his federal rights and cites the federal constitution, he raises a state law claim based on the misapplication of state law. Because "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts," the claim based on state law is not cognizable on federal habeas. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (italics in original). *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'") (citation omitted).

6

*Herrera*, 506 U.S. at 417, only "assume[d], for the sake of argument in deciding [the] case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim." Aime was not convicted of a capital felony, and state law under *Jones* provided Aime an avenue to raise his newly discovered evidence claim. *See Jones*, 591 So. 2d at 915. *Felker v. Turpin*, 83 F.3d 1303, 1312 (11th Cir. 1996) ("[T]he *Herrera* opinion itself noted that, unlike Texas, Georgia is a state that not only permits motions for new trial on newly discovered evidence grounds, but it also provides that the time for filing such motions can be extended. Therefore, this is not a case where there is 'no state avenue . . . open to process the claim.'") (quoting *Herrera*, 506 U.S. at 427) (O'Connor, J., concurring)).

Also, Aime asserts that the post-conviction court unreasonably denied his claim by "clearly depart[ing] from the guidelines set out in denying post-conviction motions without conducting an evidentiary hearing." (Doc. 1 at 6) He contends that the state appellate court unreasonably rejected his claim by "simply adopting the [post-conviction] court's alleged facts . . ., and by failing to reverse the [post-conviction] court's order and remand for an evidentiary hearing . . . ." (Doc. 1 at 7) Because Aime challenges the adequacy of the procedure implemented by the post-conviction court, and a defect in a collateral proceeding does not state a claim for relief on federal habeas, the claim is meritless. *Carroll v. Sec'y, Dep't Corrs.*, 574 F.3d 1354, 1365 (11th Cir. 2009) ("This Court has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief. . . . Because of this bar to relief, we have stated it is 'beyond debate' that a state court's failure to conduct an

evidentiary hearing on a post-conviction motion does not constitute a cognizable claim for habeas relief.").

A miscarriage of justice based on actual innocence establishes "a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits." *Herrera*, 506 U.S. at 404. *Mize v. Hall*, 532 F.3d 1184, 1195 (11th Cir. 2008) ("A claim of actual innocence is normally used not as a freestanding basis for habeas relief, but rather as a reason to excuse the procedural default of an independent constitutional claim."). Even if Aime's *pro se* federal petition is liberally construed as raising a federal due process claim based on the sufficiency of evidence and asserting that a miscarriage of justice excuses any procedural bar to the claim, Aime fails to demonstrate a miscarriage of justice.

"[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

As explained above, on the evening of the crimes, Aime claims he knew that Danapas had observed him board the boat and leave without driving the boat. Aime could have, with reasonable diligence, discovered Danapas's statement before trial. The affidavit is not signed by Danapas, and only Aime's mother and sister, who very likely want Aime to obtain relief,

8

substantiate the statements in Danapas's affidavit. (Respondent's Exhibit 16, ttachment) Also, Aime waited six years after the judgment entered in his state criminal case to submit the unsigned affidavit to the post-conviction court. (Respondent's Exhibits 3 and 15) Consequently, the Court cannot credit the authenticity of the affidavit. *Schlup*, 513 U.S. at 331 (authorizing a district court that reviews a claim of actual innocence to "consider how the timing of the submission and the likely credibility of [an] affiant[ ] bear[s] on the probable reliability of [the new] evidence").

Also, when denying the newly discovered evidence claim, the post-conviction court explained why, even if Danapas's affidavit is authentic, Danapas's testimony would not likely produce an acquittal (Respondent's Exhibit 17 at 2–4) (state court record citations omitted):

> In analyzing a defendant's claim that is allegedly based on newly discovered evidence, the Court must apply the two-prong *Jones* test. *Robinson v. State*, 770 So. 2d 1167, 1169 (Fla. 2000); *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998) (*Jones II*). First, the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the defendant or his counsel could not have known [of it] by the use of diligence." *Jones II*, 709 So. 2d at 521 (quoting *Torres-Arboleda v. Dugger*, 636 So. 2d 1321, 1324–25 (Fla. 1994)). Second, the evidence "must be of such nature that it would probably produce an acquittal on retrial." *Id.* (citing *Jones v. State*, 591 So. 2d 911, 915 (Fla. 1991) (*Jones I*). When a claim of newly discovered evidence is based on testimony from a newly discovered witness, a defendant is required to include an affidavit from that person as an attachment to the motion setting forth the testimony necessary to factually support his claim. If no affidavit is attached to the motion, the defendant must explain why the required affidavit could not be obtained. Fla. R. Crim. P. 3.850(c).
>
> In the instant motion, the Defendant alleges that the testimony of a newly discovered eyewitness, John Danapas, warrants post-conviction relief. The Defendant alleges that in March of 2014, his mother, Katherine Aime, encountered Mr. Danapas

9

and told him about the Defendant's charges and sentence. At that point, the Defendant alleges that Mr. Danapas realized that he had seen the Defendant on the night of November 17, 2005, when the Defendant and his party were boarding the boat and leaving the dock. According to Mr. Danapas, the Defendant was seated at the bow of the boat when it left the dock and therefore was not driving. The Defendant alleges that Mr. Danapas asked another individual, Robert McCreedy, to type a statement for him because he did not know how to use a computer. The Defendant alleges that Mr. McCreedy typed the statement for Mr. Danapas while the Defendant's sister, Amanda Aime, was present and then saved it to print later. The Defendant alleges that once the statement was printed, Mr. Danapas was unable to be reached by phone, text or email to sign the completed statement. Attached to the Defendant's motion is Mr. Danapas's unsigned affidavit and notarized affidavits from Amanda and Katherine Aime.

The Court finds that the Defendant's motion must be dismissed because, assuming Mr. Danapas could be located and would testify consistent with his unsigned affidavit, his testimony would not "probably produce an acquittal on retrial." *See Jones II*, 709 So. 2d at 521 (citing *Jones I*, 591 So. 2d at 915). In assessing whether the new evidence produces the [probability] of acquittal, a court must weigh the newly discovered evidence against the evidence admitted at trial. *Robinson v. State*, 865 So. 2d 1259, 1262 (Fla. 2004) (citing *Jones II*, 709 So. 2d at 521). The substance of the alleged newly discovered testimony of Mr. Danapas is that the Defendant was not the operator of the boat when it left the dock at the Sponge Docks. However, whether the Defendant was operating the boat when it left the dock is not determinative of whether he was operating the boat at the time of the fatal incident. The testimony at trial reveals that there were four individuals on the boat when it left the Sponge Docks: the Defendant, Cassandra Stuttle, Amanda Aime, and Robin Raihan (the deceased). Mr. Danapas was not on the boat. Because of this, any testimony from Mr. Danapas as to where the Defendant would have been sitting at the time of the incident would be pure speculation and inadmissible at trial. *See* § 90.604, Fla. Stat. *Bass v. State*, 932 So. 2d 1170, 1172 (Fla. 2d DCA 2006) (citing *Jones v. State*, 845 So. 2d 55, 64 (Fla. 2003)) (stating that "pure speculation cannot be a basis for post-conviction relief").

The testimony at trial revealed that there was movement among the parties while on board the boat, but that the Defendant was

10

the operator of the boat at the time of the incident; this testimony would be unaffected by testimony from Mr. Danapas regarding where the Defendant may have initially been seated when the boat left the Sponge Docks. Following an encounter with law enforcement at the Sponge Docks, Amanda Aime was instructed to drive the boat because she was the only member of the group who had not been drinking. However, after they had boarded, there was an argument about who was going to drive, and Ms. Aime was told by the others on the boat that she was not going to drive.

Ms. Stuttle, Mr. Raihan, and the Defendant sat in the back of the boat when it left the dock and Ms. Aime was in the middle; Mr. Raihan then moved to the front of the boat as it was leaving the Sponge Docks. The boat was stopped a couple of times during the trip to allow people to switch places onboard. The testimony revealed that it was the Defendant who started the boat. The boat was essentially his, he was the most familiar with it, and he was usually the driver. Shortly after the incident, Ms. Aime told the police that the Defendant had been driving the boat prior to the collision with the dock and prepared a written statement to that effect; the owner of the dock overheard her make that statement. Ms. Stuttle testified that although she had operated the boat earlier that day, she was not operating it after it left the Sponge Docks. Mr. Raihan initially sat at the rear of the boat, but moved and was sitting at the bow of the boat facing the engine when it went under the dock. In light of the evidence at trial that there was movement among the passengers on the boat but that the Defendant was ultimately the operator at the time of the incident, the purported newly discovered testimony of Mr. Danapas would not probably produce an acquittal on retrial. Consequently, the Defendant has failed to demonstrate a valid claim of newly discovered evidence, and his motion is dismissed.

Trial transcripts attached to the post-conviction court's order denying relief substantiate the summary of the evidence at trial. (Respondent's Exhibit 17, Attachment) The post-conviction court's factual determinations are presumed correct, and Aime fails to rebut the determinations with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

If the affidavit is to be accepted, Danapas observed Aime board the boat and leave and could not have observed who was driving the boat hours later when the boat crashed

11

into a dock and the fatality occurred. Because Aime fails to demonstrate that, in light of Danapas's statement, no reasonable juror would have found him guilty, actual innocence does not excuse the time-bar. *McQuiggin*, 569 U.S. at 386.

Accordingly, it is **ORDERED** that Aime's petition (Doc. 1) is **DISMISSED** as time barred. The Clerk is **DIRECTED** to enter a judgment against Aime and **CLOSE** this case.

### DENIAL OF CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Aime neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on April 9, 2025.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE